CITY OF FORT LAUDERDALE, Plaintiff,

v.

ROSS, SAARINEN, BOLTON & WILDER, INC. and Camp, Dresser & McKee, Defendants.

No. 90–6598–CIV.

United States District Court, S.D. Florida.

Oct. 26, 1992.

Paul R. Bartolacci, Wzen and O'Connor, Philadelphia, PA, and Stephen J. Riley, Ruey, Knoerr & Consolazio, Fort Lauderdale, FL, for plaintiff.

Glenn N. Smith, Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, FL, for defendants.

## ORDER DENYING MOTION TO DISMISS

PAINE, District Judge.

### Background

In July 1990, CITY OF FORT LAUDERDALE (the "CITY") sued ROSS, SAARINEN, BOLTON & WILDER, INC., and its successor, CAMP, DRESSER & MCKEE, for breach of contract and negligence,[1] alleging that:

1. In July 1969, the CITY retained PHILPOTT, ROSS & SAARINEN, INC., which became ROSS, SAARINEN, BOLTON & WILDER, INC., and is now CAMP, DRESSER & MCKEE (collectively "ROSS"), to serve as consulting engineer for the design and construction of a one-mile long water transmission main.

2. Between 1974 and February 4, 1987, the CITY used the pipeline to transmit potable water, unaware of any defect in its design and construction.

3. On July 9, 1985, a rupture occurred in the water transmission main. The ruptured pipe was replaced and the main returned to service.

4. On February 4, 1987, a second rupture occurred.

5. Following the second rupture, the CITY conducted an investigation, which revealed that a latent design defect rendered the entire pipeline worthless.

(Complaint (Exhibit to DE 1)[2] at ¶¶ 7–11, 14–17, 21).

---

1. The remaining co-Defendants have been dismissed with prejudice (DE 21).

2. This action was filed in state court but subsequently removed to federal court. Defendants attached the Complaint, and other state court pleadings, to their Notice of Removal (DE 1).

ROSS filed a Motion to Dismiss (DE 7), arguing that (i) the entire case is time-barred, and (ii) allegations in the breach of contract count contradict the express contractual terms.

## Analysis

A motion to dismiss may raise two distinct issues: whether the plaintiff has stated his purported claim with sufficient detail, and whether the claim as stated is recognized by the law.

■ As to factual detail, the Federal Rules of Civil Procedure are very liberal. The complaint need only contain "a short and plain statement of the claim...." Fed. R.Civ.P. 8(a). "All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food & Commercial Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir.1989) (collecting cases). The parties may, through discovery, inquire further into the details underlying the claim. *Bazal v. Belford Trucking Co., Inc.*, 442 F.Supp. 1089, 1102 (S.D.Fla.1977); *see generally* C. Wright and A. Miller, *Federal Practice and Procedure* § 1202 (2d Ed.1990).

[2] As to the viability of a cause of action, the Court must first accept all of the plaintiff's allegations as true. *E.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Jacobs v. Board of Regents*, 473 F.Supp. 663, 665 (S.D.Fla. 1979). Consideration of matters beyond the four corners of the complaint is improper. *Milburn v. United States*, 734 F.2d 762 (11th Cir.1984). A motion to dismiss should not be granted unless the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### 1. Statute of Limitations

■ The statute of limitations is ordinarily an affirmative defense, which must be pled and proven by the defendant. But when a complaint shows on its face that the limitations period has run, the defect may be raised by a motion to dismiss. *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir.1982).

■ ROSS argues, and the CITY agrees, that the contract and negligence counts are governed by a single statute providing for the commencement within four years of any action "founded on the design, planning, or construction of an improvement to real property." Fla.Stat. § 95.11(3)(c). If the action involves a latent defect, the four-year period begins when "the defect is discovered or should have been discovered with the exercise of due diligence." *Id.*

In this case, the CITY flatly alleges that it was "unaware" of the defect in pipe design on February 4, 1987, the date of the second rupture. (Complaint at ¶ 15). ROSS nonetheless argues that the limitations period must, as a matter of law, be measured from the *first* rupture (DE 7 at 7). Its argument is based upon three Florida cases: *Havatampa Corp. v. McElvy, Jennewein, Stefany & Howard, Architects/Planners, Inc.*, 417 So.2d 703 (Fla.2d Dist.Ct.App.1982), *Conquistador Condominium VIII Ass'n, Inc. v. Conquistador Corp.*, 500 So.2d 346 (Fla. 4th Dist.Ct. App.1987), and *Almand Constr. Co., Inc. v. Evans*, 547 So.2d 626 (Fla.1989).

In *Havatampa*, the owner "knew that the roof was leaking" when it took possession of a newly constructed manufacturing facility. 417 So.2d at 704. Despite inspections and repairs, the roof leaked "more or less continuously" for the next four-and-one-half years, when an independent consultant reported that the defect was complex and not easily discoverable. *Id.* The owner thereafter sued the architect, contractor, subcontractors, materialmen, and bonding company.

The appellate court, affirming a summary judgment for the defendants, held that the owner "cannot rely on a lack of knowledge of the specific cause of the problem to protect it against expiration of the four[-]year statute of limitations." 417 So.2d at 704. The court rejected any suggestion that one must have "knowledge of the specific nature of the defect causing an obvious problem before the statute of limitations commences to run." *Id.* (criticizing *School Bd. of Seminole County v. GAF Corp.*, 413 So.2d 1208 (Fla. 5th

Dist.Ct.App.1982)).[3]

In *Conquistador*, unit owners took control of a condominium in 1974 and discovered roof leaks by 1976. During a 1979 meeting, the condominium association reported that "much of [sic] all the trouble is the result of inadequate and shoddy construction...." 500 So.2d at 347. That same year, the unit owners began spending money to repair the roof. But they did not file suit until five years later.

The appellate court, again affirming a summary judgment, found no merit in the owners' argument that "they did not know that the roof was defective until they received the engineer's report in 1982." 500 So.2d at 347. Focusing upon the commencement of repairs, the court held: "as a matter of law [the condominium association] had notice in 1979 that a defective condition existed." *Id.*

In *Almand*, homeowners notified their seller/builder in 1978 of structural damage that had resulted from settling during the previous six years. The seller attempted repairs in 1979. Three years later, an engineer stated that the settling and resultant damage was caused by construction of the house on unsuitable fill. The owners sued the seller in 1985.

The seller moved for summary judgment, arguing that notice of a defective condition, rather than knowledge of its specific cause, starts the limitations period. The Florida Supreme Court agreed: "The [owners'] knowledge of the settling of the house and resultant damage, which they concede they had as early as 1978, was sufficient to put them on notice that they had, or might have had, a cause of action." 547 So.2d at 628.

The lesson of this trio of cases is not altogether clear: *Havatampa* focuses on notice of an obvious problem, *Conquistador* employs the date of repairs, and *Almand* approves *Havatampa* without mentioning *Conquistador*. Moreover, the Supreme Court decision in *Almand* makes no mention of the CITY's key authority, *Board of Trustees of Santa Fe Community College v. Caudill*

*Rowlett Scott, Inc.*, 461 So.2d 239 (Fla. 1st Dist.Ct.App.1984).

In *Caudill*, a college entered into a building construction contract in 1968. From 1972 through 1979, sporadic leaks occurred in the underground piping. These leaks were repaired and generally attributed to routine problems on a large construction project. In November 1979, however, the college discovered that the metal pipes were corroded and surrounded by "gumbo clay." In 1981, the college sued the architects, mechanical engineers, general contractors, and mechanical contractors.

After denying the defendants' motion to dismiss, the trail court granted their motion for summary judgment, ruling that the limitations period ran from the discovery of leaks in 1972. The appellate court reversed, finding factual issues regarding whether (i) any of the pre–1979 leaks were caused by corroded pipes, and (ii) the college should have discovered the corrosion sooner. 461 So.2d at 243–44. The court also distinguished three "roof leak" cases, including *Havatampa*:

> "roof leaks" which occur as soon as the roof is finished indicate that either the architect, the roofing contractor, or the material supplier is at fault; "leaky pipes" may be due to a variety of accidents or failures completely unrelated to corrosion caused by improper backfill (improper connections, damage by heavy vehicles or later excavation, a "water hammer effect," defectively manufactured pipe, etc.); defects in underground water pipes are not as easily detectable as defects in a roof, which become apparent after every rainstorm.

■ ROSS argues that, because *Almand* was not a roof leak case, *Caudill* has been "implicitly overruled" (DE 7 at n. 3, DE 15 at 8). The undersigned disagrees. Structural damage, like roof leaks, gives clear notice of a narrow range of potential construction flaws. Leaky pipes may be due to a variety of problems. Thus, the reasons underlying *Caudill* remain valid after *Almand*. Stated

---

**3.** *GAF Corp.* was subsequently reversed by the Florida Supreme Court. *Kelley v. School Bd. of*

*Seminole County,* 435 So.2d 804 (Fla.1983).

differently, both cases measure the limitations period from the notice of a defective condition. *Caudill* simply recognizes that, with underground pipes, notice of a defect is more difficult to imply.

The CITY herein alleges that it was "unaware" of the defect in pipe design until 1987. Assuming the truth of this allegation, the court declines to imply notice as a matter of law, and thereby bar the contract and negligence claims, because the CITY admits prior knowledge of a single leak in a one-mile stretch of pipe eleven years after its first use.[4] It appears that summary judgment on the issue may be inappropriate as well: "[w]hether one by exercise of reasonable diligence should have known he had a cause of action against the defendant is, ordinarily, a question of fact which should be left to the jury." *Caudill*, 461 So.2d at 243 (citing cases).

### 2. Contractual Obligations

ROSS argues that many of the alleged breaches of contract do not correspond to specific contractual duties imposed by the written agreement attached to the Complaint as Exhibit A (DE 7 at 14). The CITY responds that the parties' full agreement includes the specifications attached as Exhibit B, which imposes additional duties (DE 14 at 14). Although ROSS replies that only Exhibit A forms the basis of the CITY's contract claim (DE 15 at 10), the Complaint states that "[t]he contractual obligations of Ross to the City include, *but were not limited to*, those set forth in [Exhibit A]" then specifically references the representations reflected in Exhibit B. (Complaint at ¶¶ 8–9) (emphasis added). The CITY has clearly put ROSS on notice of its legal claim; ROSS may, through discovery, explore the parties' express agreement and/or subjective intent.

### Conclusion

It is hereby ORDERED and ADJUDGED as follows:

1. The Motion to Dismiss (DE 7) is DENIED.

---

4. Even the cases cited by ROSS were not decided

2. ROSS shall file an Answer within ten (10) days.

DONE and ORDERED.

until the summary judgment stage.